## DAVIS v. MORLEY.
### No. 5522.

Court of Civil Appeals of Texas. Amarillo.

March 1, 1943.

R. L. Graves, of Brownfield, for appellant.

Truett Smith and Tom Garrard, both of Tahoka, for appellee.

STOKES, Justice.

This is an action in trespass to try title filed July 16, 1942, by appellee, Cora Lucile Morley, against appellant, Effie L. Davis, who answered by a plea of not guilty and by setting up the three- and five-year statutes of limitation under Articles 5507 and 5509, R.C.S. 1925. A jury was impaneled to try the case but at the close of the testimony, on motion of appellee, the court instructed the jury to return a verdict in her favor and, upon return of such verdict, judgment was rendered accordingly, to which appellant duly excepted and from which she has perfected an appeal to this court.

The suit involves 9.92 acres of land, being a strip 29 varas north and south by 1901 varas east and west off the south side of Section 272, Block D, John H. Gibson Survey in Yoakum County. The record shows that T. D. Davis, the husband of appellant, acquired the land through mesne conveyances emanating from the original awardee, J. P. Ernest, and that it was forfeited for nonpayment of interest on July 12, 1913. On December 13, 1913, T. D. Davis made application to repurchase the land and it was awarded to him on February 3, 1914. On January 27, 1922, T. D. Davis conveyed the section of land to his wife, the appellant herein, and it was again forfeited on August 10, 1925. Mrs. Davis made application to repurchase it and it was awarded to her on February 3, 1926. On May 10, 1926, appellant and her husband, T. D. Davis, executed to G. E. Lockhart, trustee, a deed of trust conveying to him Section 272 in trust to secure the payment of a note in the sum of $2,000, payable five years after its date to Otto Stolley at Austin in Travis County. Otto Stolley assigned the note and deed of trust lien to Mrs. Cora E. Morely, mother of appellee, Cora Lucile Morley, and after the mother's death Ruth Morley Hudson, the only other heir at law of Cora E. Morley, joined by her husband, O. A. Hudson, assigned her interest in the note and lien to appellee. On September 1, 1934, appellee filed suit in the District Court of Travis County against appellant and her husband, seeking judgment on the note and foreclosure of the deed of trust lien, and she procured such a judgment on April 22, 1935. An order of sale was duly issued under which the land was sold by the sheriff of Yoakum County on the first Tuesday in July, 1935, at which sale appellee became the purchaser.

In the awards issued by the Commissioner of the General Land Office and in all of the above-mentioned deeds and assignments, the land was described as "all of Section No. 272 * * *, containing 640 acres of land." On January 13, 1929, the section of land was resurveyed and it was discovered that it contained 649.92 acres. It seems that until shortly before this suit was filed, the fence on the south side of the section was located 29 varas north of its south line, leaving the strip here involved outside of the enclosure, and after appellee purchased the land at the foreclosure sale appellant vacated the house and all of the land north of the fence. She was in possession of about 25 acres on the north side of Section 313 adjoining Section 272 on the south and when she vacated Section 272 she moved onto this 25 acres, which, together with the 9.92 acres here involved, she enclosed with a fence, constituting, in the aggregate, about 35 acres within her enclosure, where she continued to live and which she continued to occupy and cultivate after the foreclosure proceedings, the sale by the sheriff, and purchase by appellee.

Appellee instituted an action in trespass to try title against appellant on March 26, 1937, in the District Court of Yoakum County, in which she sued for the title and possession of Section 272, describing it by the field notes of 1929, and alleged that the section contained 650 acres. On June 16, 1937, appellee procured a judgment against appellant for the title and possession of the land sued for. On June 17, 1937, a patent was issued to appellant by the Commissioner of the General Land Office to the South 9.92 acres of Section 272, describing it by field notes substantially as follows: Beginning at the southwest corner of Section 271 and the southeast corner of Section 272; thence north 29 varas to a point in the east line of Section 272; thence north 89 degrees 54 minutes west

1901 varas to a point in the west line of Section 272; thence south 29 varas to the southwest corner of Section 272; thence south 89 degrees 54 minutes east 1901 varas to the place of beginning.

No writ of possession was executed upon the Yoakum County judgment and appellant remained in possession of the 9.-92-acre strip until this suit was filed July 16, 1942, slightly more than five years after the judgment was procured by appellee in the District Court of Yoakum County and the patent was issued to appellant.

Appellant presents a number of assignments of error assailing the judgment and the action of the court in peremptorily instructing the jury against her, insisting that reversible error was committed thereby because, first, the 9.92 acres of land was excess or vacant land and, as such, was sold to her by the Commissioner of the General Land Office as unsold school land; secondly, that, even admitting she had been divested of the title by the foreclosure sale and the judgment of the district court in the trespass to try title suit, the 9.92-acre strip was afterwards conveyed to her by the patent from the State and constituted a subsequently-acquired title; thirdly, that the patent constituted title or color of title and was a sufficient basis for the perfection of her title under the three-year statute of limitation, Article 5507, R.C.S.; and, fourthly, that the patent constituted a sufficient basis for her occupancy of the land and perfecting title thereto under the five-year statute of limitation, Article 5509, R.C.S.

Appellant's first contention, that the strip of land in controversy was conveyed to her by the patent as unsold school land and therefore constituted a valid sale by which she procured the title, is based upon the fact that the awards and all of the deeds executed prior to 1929, including the deed of trust and foreclosure sale through which appellee procured the title, described and conveyed Section 272 as 640 acres of land. She contends that when it was discovered by the resurvey of 1929 that the section contained 649.92 acres, it was thereby revealed that it contained 9.92 acres of excess land and that by issuing the patent of June 17, 1937, the Land Commissioner segregated the title to that tract from the rest of the

section and the issuance of the patent to her constituted a direct sale of this excess.

This contention of appellant can not be sustained for two reasons. First, all of the awards issued by the Commissioner of the General Land Office called for the entire section, designating it as Section No. 272, Block D. John H. Gibson Survey. Although the record does not show the original survey of the section, the designations in the awards clearly imply that the land had theretofore been surveyed and contained designated boundaries. The awards designated the area contained in the section as 640 acres but the effect of each of them was to pass title to the entire section regardless of the number of acres it actually contained. Although no field notes were included in the awards and it was afterwards learned by the resurvey that the four lines of the section actually included 9.92 acres more than was called for by each of the awards, it is clear that the purpose and intention of the land commissioners in issuing the awards was to award the entire section the same as it would have been if the field notes running 1,901 varas east and west by 1,930 varas north and south had been included therein. Kelly v. Kelly, Tex.Civ.App., 178 S.W. 686, 688. In the cited case it was held that "where the limits of a survey can be certainly known by its own description, any excess in acreage embraced within its limits, unless considerable, will not constitute a vacancy subject to resale." The limits of Section 272 were known by the Commissioner of the General Land Office at the time the first award and all subsequent awards were made by him because, as we have said, the awards implied an original survey made before any of them were issued, and any excess acreage embraced within the limits of that survey could not be called vacant or unsold land, because the awards included the entire survey.

In the second place, this contention of appellant can not be sustained for the reason that it would be in direct violation of a long-standing policy of the State. Its policy has always been to place only such public lands on the market for sale as have not already been sold. Juencke v. Terrell, Commissioner, 98 Tex. 237, 82 S.W. 1025; State v. Bradford, 121 Tex. 515, 50 S.W.2d 1065, 1080. It has never been regarded as the ministerial duty of

the Commissioner of the General Land Office to annul patents and awards. Appellee was claiming the land under the award to appellant of February 3, 1926, and the subsequent foreclosure and sheriff's sale. The law clothes the Attorney General with power to institute suits for the recovery of lands held under awards or patents from the State where the State may deem itself entitled to recover them, and any person who claims or owns lands under such documents is entitled to be heard and to an opportunity to resist any claim the State may assert. In the Bradford case, supra, Judge Sharp, speaking for the Supreme Court, made this very clear when he said: "It is not the public policy of this state to place public lands upon the market for sale where they have already been sold and are held by patents and awards or other conveyances regularly issued by the officers of this state, and claimed and occupied by those who hold 'under color of title from the sovereignty of the state.' It is the rule to offer for sale 'only vacant and unoccupied public domain.' If there is a question about the title to the land, the law requires that the Attorney General bring suit to recover the land or remove the cloud from the title thereof." See also Weaver v. Robison, 114 Tex. 272, 268 S.W. 133; Lovett v. Simmons, Tex.Com.App., 29 S.W.2d 1021.

As we have already said, appellee held and owned the entire Section 272 under the deed of trust executed by appellant and her husband in 1926, the foreclosure thereof in 1934, and her purchase of the land at the sheriff's sale under that foreclosure. The fact that the section contained slightly more than the 640 acres designated by the deed of trust, judgment, and sheriff's deed would not change the effect of these documents. But even if it could be said, by reason of the resurvey in 1929 and the discovery that the section contained 9.92 acres more than the 640 acres designated in the award, that the 9.92 acres was excess land and subject to recovery by the State, nevertheless it was within the boundaries of the tract claimed by appellee under the award to appellant in 1926, and appellee therefore claimed it under color of title from the sovereignty of the State. If the State desired to repossess itself of any excess that the section contained, it was necessary that the Attorney General file suit therefor and

permit the courts to adjudicate the matter, thus giving appellee her day in court. This was not done and there is, therefore, no merit in this contention of appellant.

The second contention presented by appellant is that, although she had owned all of the land embraced within Section 272 and had been divested of the title thereto by the foreclosure proceedings, and although appellee procured judgment in the trespass to try title suit in the District Court of Yoakum County, thus again divesting appellant of any title she may have held at that time to any part of the land, the tract of 9.92 acres here in dispute was afterwards patented to her by the State and she thereby became vested with a subsequently-acquired title to that tract.

As we have shown in the foregoing statement, appellee was the owner of the land under her purchase at the sheriff's sale in the foreclosure suit in the District Court of Travis County. Appellant was thereby divested of all her title and interest in the land. Thereafter, appellee procured a judgment in the District Court of Yoakum County in which appellant was again divested of any title or right of possession which she then claimed. The land had been awarded to her on February 3, 1926, under her application to purchase it, and it was the title procured by her under this award that was involved in those two suits. It has been held by an unbroken line of decisions of our courts since an early day that when a patent is issued by the State to the original purchaser under such circumstances, it inures to the benefit of the owner of the land. If the purchaser from the original settler wishes to do so, he may file his chain of title in the General Land Office, obtain a patent in his own name, and thus be substituted for the original purchaser and carry out the contract contemplated by the award; but if he fails to do this it does not affect his title as against the original purchaser, and if the latter completes the contract and obtains a patent in his own name or, in case of his death, if his heirs should complete the contract and obtain a patent in their names, it inures to the benefit of the true owner of the land. Morrison v. Faulkner, Tex.Civ.App., 21 S.W. 984; Satterwhite v. Rosser, 61 Tex. 166; Lowry v. Carter, 46 Tex.Civ.App. 488, 102 S.

W. 930; Hollis v. Myers, Tex.Civ.App., 179 S.W. 57; Elliott v. Nelson, 113 Tex. 62, 251 S.W. 501.

■ A further contention made by appellant under these assignments of error is that inasmuch as the section contained an excess of 9.92 acres, the Commissioner of the General Land Office had authority to sell and patent to her the excess acreage, under Article 5329, subdivision 4, R.C.S., wherein the Land Commissioner is given authority to issue patents on any portion of an awarded tract less than the whole, and she claims that the issuance of the patent to her was the exercise of such authority. As we have already said, the action of the Land Commissioner in issuing the patent did not have the effect of segregating the title to the patented tract from the remainder of the section; but even if it had, and the Commissioner of the General Land Office had acted under the authority given him by subdivision 4 of the Article mentioned, it would not have had the effect claimed by appellant. The subdivision of the statute mentioned is clearly for the benefit of the true owner of a larger tract of land. It provides only that "if any owner or claimant of any land included in this chapter, which ownership or claim is shown on the records of said (Land) office, should desire a patent upon a portion thereof less than the whole, such owner or claimant may, with the approval of the Commissioner, file field notes with lawful filing fee for that portion on which patent is desired and obtain a patent therefor when the land is fully paid for with all lawful fees. * * *" It further provides that "if a patent should be issued in the name of one other than the legal owner, such patent and the rights granted therein shall inure to the benefit of the legal owner." Thus it will be seen that by the very statute invoked by appellant, instead of vesting her with title to the contested strip of land, it was thereby vested in appellee. These contentions are, therefore, likewise without merit.

■ This brings us to the contentions of appellant that she had perfected title to the land under the three- and five-year statutes of limitation. She contends that having procured a patent to the 9.92 acres on June 17, 1937, and having had peaceable and adverse possession thereof under title or color of title for more than three years, the land should have been awarded to her by the judgment of the court.

The rule is well established in this State that after the patent issued to appellant, appellee thereby became vested with both the legal and equitable title to the land. This is by virtue of the rule above announced that the patent inured to the benefit of appellee as the successor in title to the appellant. Under such circumstances appellant did not have title or color of title that would support a claim of limitation under the three-year statute, Article 5507, for the reason that the statute contemplates the possession must be under a chain of title emanating from the sovereignty of the soil and terminating in the possessor. As is clearly established by the authorities above cited, and many others, appellant did not procure any title or color of title under the patent, because the patent inured to the benefit of appellee and had the same effect that it would have had if it had been issued in appellee's name. Illies v. Frerichs, 11 Tex.Civ. App. 575, 32 S.W. 915; Baldwin v. Root, 90 Tex. 546, 40 S.W. 3; Cagle v. Sabine Valley Timber & Lumber Co., 109 Tex. 178, 202 S.W. 942, 6 A.L.R. 1426; Humphreys v. Edwards, 89 Tex. 512, 36 S.W. 434; Morgan v. Baker, Tex.Civ.App., 40 S.W. 27; Broussard v. Cruse, Tex.Civ. App., 154 S.W. 347; Arrowood v. Blount, Tex.Civ.App., 294 S.W. 616.

■ Under her fourth and last contention, appellant asserts that she perfected a title to the land under Article 5509, R.C.S., known as the five-year statute of limitation, having had peaceable and adverse possession under the patent for more than five years. That statute provides that every suit to recover real estate as against a person having peaceable and adverse possession thereof, cultivating, using, or enjoying the same and paying taxes thereon, if any, and claiming under a deed or deeds duly registered, shall be instituted within five years next after the cause of action shall have accrued and not afterwards. The testimony showed that while appellant, after the foreclosure proceedings in Travis County, vacated all of Section 272 except the South 9.92 acres, she did not vacate that strip but retained possession of it continuously thereafter and was in possession of it when this suit was tried. She obtained the patent on June 17, 1937, and the suit was filed July

16, 1942. She therefore had possession for more than five years after the patent was issued. But possession alone is not sufficient to satisfy the statute. Such possession must be held under a deed or deeds. Granting that a patent from the State constitutes such a document as is contemplated by the statute and may be considered a deed, the law plainly implies that the deed must be such an instrument as conveys the land to, or at least for the benefit of, the person claiming such possession. Ammerman v. Bourland, Tex.Civ. App., 230 S.W. 804. Appellant was holding possession of the land under the patent which, as we have said, inured to the benefit of appellee. The only reason it issued to appellant, or could have issued to her, was that as shown by the records of the General Land Office at Austin she was the owner of the land. As we have said, appellant had been divested of the title before the patent issued and whatever title she had was vested in appellee. Since the patent inured to the benefit of appellee, appellant procured nothing by its issuance. She was, in effect, holding possession under a deed to appellee. While, under the five-year statute, it was not necessary that the deed under which appellant held convey the title to her, it was necessary that it purport to convey the land to her. Rosborough v. Cook, 108 Tex. 364, 194 S.W. 131.

There is another cogent reason why appellant had not perfected a title to the land under the five-year statute, and that is, that her possession during the five years claimed by her was not legally adverse to appellee. The record does not show any act performed or word spoken by appellant until this suit was filed which would constitute notice to appellee that her continued possession of the land after the judgment was rendered by the District Court of Yoakum County was adverse or in hostility to the rights of appellee. The law is well settled that the continued possession of land after a judgment of a court of competent jurisdiction has been rendered in which the possessor is divested of title and the title is vested in another is considered in subordination to the title so adjudicated. Appellant could not assert adverse possession after the decree against her without bringing express notice to appellee that her claim was adverse and hostile to that of the latter. Without such notice, her possession during the time intervening between the decree and the institution of the instant suit gave her no better right than she possessed before the decree was entered. Such notice not having been given, her possession was not adverse but was subordinate to the title of appellee. Root v. Woolworth, 150 U.S. 401, 14 S.Ct. 136, 37 L.Ed. 1123; Green v. Strubbe, 234 Ky. 380, 28 S.W.2d 469; Du Pont v. Charleston Bridge Co., 65 S.C. 524, 44 S.E. 86; Voight v. Mackle, 71 Tex. 78, 8 S.W. 623.

The recording of the patent in the deed records of Yoakum County did not have the effect of notice to appellee of any adverse claim of appellant because, in the first place, the patent inured to the benefit, not of appellant, but of appellee; and, in the second place, it was not in appellee's chain of title. The law is well settled that a purchaser is bound with constructive notice of all recorded instruments lying within his chain of title, but it is equally as well settled that, except as an aid to legally contemplated adverse possession, the record of a deed or instrument lying outside of his chain of title imports no notice whatever to him. Brown v. Ackerman, Tex.Com.App., 17 S.W.2d 771; Costley v. Gracy, Tex.Civ. App., 52 S.W.2d 920.

Appellant not having given actual notice to appellee of the adverse nature of her possession and there being nothing in the record to warrant the conclusion that appellee had constructive notice thereof, and the presumption of law being that such possession as appellant held was in subordination to the rights and interests of appellee, appellant wholly failed to establish the adverse and hostile nature of the possession required to perfect a title under the five-year statute of limitation, and she was therefore not entitled to recover under that statute.

There was no conflict in the testimony concerning the matters we have discussed and from what we have said it is clear that, in our opinion, appellant was not entitled to recover under any theory of the case. The court therefore did not err in refusing to submit the special issues requested by appellant, nor in giving to the jury a peremptory instruction to return a verdict in favor of appellee. The judgment of the court below will therefore be affirmed.